May it please the court, Parker Ryder Longmaid for petitioner appellant Torey Adamcik. I'd like to reserve two minutes to rebuttal. In the brief time we have, I'd like to focus on what I think is the best and narrowest way for the court to resolve this case. And I'll try to outline that briefly in three parts. First, the relevant rule. Second, what the state courts did. And then third, where to go from here. So first, the relevant rule. Miller Montgomery clearly established that juvenile life without parole sentences are unconstitutionally disproportionate for offenders who are not irreparably corrupt. Jones doesn't disturb that holding. In fact, it expressly reaffirmed that substantive principle and what it called Montgomery's key paragraph. It expressly did not overrule Miller or Montgomery, and it also did not reach any substantive as applied disproportionality claim as there The critical point here, as I'll explain in a minute, is that Montgomery makes clear that evidence of post-sentencing rehabilitation is relevant to the disproportionality inquiry. So second, what the state courts did here. The Idaho courts disregarded these propositions and therefore the Idaho Supreme Court's decision is not entitled to a deference. Specifically, the courts failed to address Torey's evidence of post-sentencing rehabilitation. They did not allow him an evidentiary hearing and instead looked only to the sentencing record, which at that point was eight years old. Counsel, let's suppose that the Idaho courts had followed the cases to a T. And that is that not only had they cited Miller and Montgomery in anticipation of them, but they had cited every key phrase from those cases. Would you still be here claiming that we can consider post-sentencing rehabilitation? Your Honor, I don't think the issue, respectfully, is whether the courts used any magic words or cited any particular language from Miller or Montgomery. Because the issue is, of course, there's a substantive component to Miller and Montgomery and there's a perspective. You don't have very much time and I just want to be clear. We know that. We have a published opinion on that point, but Judge Bybee's question is important to me. Could you address it? Let me rephrase it just a little bit. I'm going to tell you in my hypothetical that the Idaho courts have done everything that the Supreme Court wanted them to do in terms of the hearing, the findings, and so forth. But you would have evidence of post-sentencing rehabilitation. Would that be relevant to our decision today if we thought that there was no error on the original hearings in the Idaho courts? I think it would, Your Honor, for the reason that I was about to get to. One way which I think Your Honor's hypothetical excludes is whether the decision here was contrary to Montgomery because Montgomery makes clear at 577 U.S. 212 to 213 that post-sentencing evidence is relevant and the courts didn't look at that. But the important part here is that we know from a hearing that occurred on post-conviction review in the state courts that Torrey expressed remorse and he apologized to Cassie's family. In fact, and so what I think is important about that point is that the courts didn't consider that evidence when they were adjudicating on post-conviction review whether Torrey was irreparably corrupt and whether his sentence was unconstitutionally disproportionate. And if you look at the decisions that we cite from the Fourth Circuit on pages 61 through 63 of the Blue Brief, what those decisions say is that where the state courts make, purport to adjudicate a claim on a materially incomplete record, they have not actually adjudicated the claim for purposes of Section 2254D. And I think that's a very important issue here because it's another way to look at what happened instead of just saying it's contrary to Montgomery's instruction that post-sentencing evidence of rehabilitation is relevant. Counsel, counsel, if I could get a word in here. This record is unusual in that compared to some cases we have where at sentencing the defendant was able to put in quite a bit of evidence of rehabilitation. Do you want to speak to that? I would like to, Your Honor, and I would just say that I think the evidence that Torrey put in at sentencing was evidence that was prospective and it said he does have the capacity to change. The conduct of the crime shows that he was immature, that he was not thinking about consequences. What Dr. Corgi had said who examined him for a number of hours was that he was very low risk to re-offend. Counsel, counsel, forgive me. I know I'm interrupting, but I've read that. I've read all of it. And in a case of this magnitude, we read the record carefully. So I think your problem is that the trial court wasn't persuaded by that evidence, right? Your Honor, so where I was going to go with that is that what we know from the post-conviction proceedings is that what Dr. Corgi was saying was actually borne out over time because we know that Torrey was able to express remorse and an apology seven or eight years after  The sentencing court isn't required to leave the record open for years and years on end. That gets you back to Judge Bybee's question. I would agree, Your Honor, the sentencing court isn't required to leave the record open. Of course, the claim that was brought before the sentencing court was under the Idaho Constitution. And then when Torrey brought the claim with his post-conviction, state post-conviction review petition in 2013, which was then ultimately adjudicated in 2015 and 2016 on this issue, he was arguing at that point that there was relevant evidence. And what the state courts did at that point, including the Idaho Supreme Court, was they restricted their review only to what the sentencing court had looked at. Can I get you to focus on my question? I just want to give a chance to... Here's what I'm wrestling with for the sake of both lawyers. I'm only one of three. I think the trial court didn't have Miller or Montgomery, right? The sentencing judge. The post-conviction judge, if I'm understanding correctly, had Miller only, but not Montgomery. The Idaho Supreme Court had Miller and Montgomery, but not Jones. Do I have that right? For the most part, Your Honor, the one amendment I would make is that the post-conviction state court did have Montgomery when it denied reconsideration. I think that's right, but not when the briefing was prepared. But be that as it may, maybe I can... I don't want to waste your time, but the last reasoned decision, of course, were reviewing the Idaho Supreme Court. They didn't have Jones, but they had Miller and Montgomery, right? So what I'm wrestling with is whether or not we can say that the Idaho court's decision was unreasonable. Idaho Supreme Court was convinced that the trial court had effectively, even though it didn't have Miller, had really engaged in the Miller inquiry, I think. And as I said, we have been over this record. So what is loud and clear to me is that the sentencing judge decided that your client was very dangerous. He made a finding that your client would kill again. But he also made a finding that your client had, he listened to the evidence, and their frontal lobes weren't fully developed. And he said part of this is because of your age. So what I'm trying to get at is what is it in the record that tells me that in addition to finding that this individual is a very, very dangerous individual that, for both of you, I'd like you to address, where did the court, the sentencing court, make a finding – and I'm using that term very loosely – engage in the inquiry about whether that condition, his very dangerousness, was permanent or not capable of being rehabilitated? Your Honor, I don't think the sentencing judge did make such a finding. I think that when the Idaho Supreme Court went through what the sentencing judge had done, as we explained in the briefs, the Idaho Supreme Court essentially looked at it as a procedural matter only and asked whether the sentencing judge had considered the relevant factors. But as we explained in the briefs, to answer your question directly, I don't think the sentencing judge equated the comment about killing again with a finding of permanent corruption or reparable – Why not? Because I think that would be the finding, right? That or this notion about the ADHD and the – Well, I think for one of the reasons your Honor said, which is the sentencing judge didn't have any of the benefit of Miller Montgomery and wasn't even looking at it under that framework. And so at that point, there's no way to distinguish what the sentencing judge said about perhaps recidivating five years down the line with saying, if we release you when you're 70 years old, you might kill again at that point. So – and I also think, just to go back to what I was saying, that it is important to look at what the post-conviction courts were presented with when they were asked to adjudicate the substantive Eighth Amendment claim. And they had at that point, when they denied reconsideration, the testimony that Tory had given on his ineffective assistance claim where he expressed remorse and was apologetic, which just further bore out with what Dr. Courgette was saying. You contend that the Supreme Court's decision is not entitled to ad pedeference because it did not consider the substantive question. Did this court not unequivocally, in the last paragraph of its decision, say that there had been compliance with Miller Montgomery and Johnson such that it's either explicit or implicit that they considered the substantive issue? Your Honor, I think the fairest reading from pages of the record 84 through 87 of what the Idaho Supreme Court did was it looked at the entire inquiry as a procedural one. But in any event, I think the narrow issue that I am arguing now is that the court did not consider this evidence of post-sentencing rehabilitation. And for that reason, as we explained in pages 61 through 63 of the brief, did not actually adjudicate the substantive claim as Tory brought it to the post-conviction courts. But if the issue was presented, doesn't Richter suggest that they impliedly ruled on all issues presented to them? Therefore, either explicitly or implicitly, they ruled on the substantive question? Your Honor, I see that my time is expiring. If I may just answer. Of course. Of course. So the way I would respond to that is to say that Harrington v. Richter applies where there is no reason decision of the state court. And then the presumption is that the court did resolve the question on the merits and the federal court applies hypothetical rationality. But the difference here is we explain the reasons that we know what the Idaho Supreme Court actually said and wrote. We have the decision before it. And so under Wilson v. Sellers Supreme Court decision from 2018, this court would look at the actual reasoning of the Idaho Supreme Court. Anything else? Thank you for your argument, counsel. When you could for planning purposes, when you  Thank you, Your Honor. You bet. Counsel, we're ready for your argument. Thank you, Your Honor. May it please the court. Good morning. I am Deputy Attorney General Mark Olson representing the respondents. This appeal was stayed pending the United States Supreme Court decision in Jones because it was clear that the holding in that case would compel the outcome here. And that is the case. Jones held that under the Miller framework, which is what we're talking about today in a case involving a juvenile murder sentencing, a state's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient. The problem, as the court said over and over again in Miller, the problem with mandatory sentencing schemes is that they make youth irrelevant. And that's why they're unconstitutional. Miller, as we know, did not contain any direct or implied factual finding requirements and certainly does not require a reviewing court to make a factual finding. Counsel, counsel, counsel, can I just. We know that because we had Brionis, we long ago talked about no magic words. We get that. OK, thank you. But is it your position that the and I seem to think in your brief, I think you're taking a much more aggressive position. They don't need to engage in this inquiry, the fundamental inquiry. What is it you think that survives Jones? I think what survives Jones is what Jones tells us, that the substantive, the procedural requirements of Miller Montgomery are satisfied with the discretionary sentencing scheme. And your honor, I would suggest that if the Idaho Supreme Court had simply held Miller does not apply in Idaho because Idaho has a discretionary sentencing scheme for juveniles for all defendants. That would. Counsel, as long as the as long as the district, as long as a state trial judge has discretion, that will satisfy Miller and Montgomery and Jones. But what if the state what a state judge doesn't consider evidence of immaturity or, you know, the juveniles mental state? Well, your honor, if there's affirmative information in the record that the sentencing court failed to consider either the youth based mitigation evidence presented by the defendants or its discretionary authority to to impose a sentence of fixed life, that would be a violation of the Miller Montgomery frame framework. Other than that, as Jones tells us, I think three separate times the the Miller Montgomery framework is satisfied entirely with a discretionary sentencing scheme. Wait a minute. You said that now twice, but then you've also said that you think it would be error for the state court to not consider evidence of youth. So which is can I just get the state's position on this point clearly? Thank you, your honor. To clarify that, and this is just from the majority opinion in Jones, the discretionary sentencing scheme does satisfy Miller Montgomery. The majority opinion in Jones also opines that if there was affirmative evidence in the record that showed that those things were not considered, that could be considered as well by a court evaluating the Miller Montgomery framework. But if the court says nothing at all, that would not satisfy the Miller Montgomery framework because Jones tells us that there is no fact finding requirement. There is no implicit fact finding. So we've read Jones, but I'm just trying to get I still think you're saying two different things in response to Judge Bybee's question. What's the state's position on this? Twice you've said that if the state court has discretion, that satisfies Jones full stop. Is that your position? Yes, without that is my position are with as the exception presented by Justice Kavanaugh and Jones, that if there is affirmative information where, for example, if the if the sentencing court were to say something like defendants, I don't care that you're young. I'm not going to consider your youth. I'm not going to consider my discretion. I feel as the judge that everybody who commits a murder regardless of their age should be getting fixed life. That would be certainly already an abuse of discretion under Idaho law, but it would also implicate the Miller Montgomery framework because we have this affirmative evidence in the record. If the court said nothing at all about youth, that would not violate the Miller Montgomery framework. I hope that clarifies it, Your Honor. The discretionary sentencing scheme is constitutionally necessary and constitutionally sufficient. And without any other information, that's all a court has to show or that's all a reviewing court has to look for to determine the constitutionality of a sentence. What is the strongest evidence in the record supporting the state Supreme Court's decision that the that the trial court did consider both evidence of the defendant's youth and also whether he was one of those rare individuals? And I'm not talking about any magic words, but. Certainly, Your Honor, and certainly with the with the acknowledgement, first, that it was not required to make any factual findings. I think because a lot of these things mandated by Miller were already a part of Idaho law, the Idaho Supreme Court did identify and affirm these factual findings. One that despite Adam Schick's youth, this was the crime. This crime was the type of rare act that justified the punishment. And as Your Honor mentioned earlier, I believe that Adam Schick's crimes were not the result of transient immaturity and he would likely kill again if released from prison. That's from the Idaho Supreme Court opinion. And those are affirming facts that were found by the trial court, who, as we said, did not have the benefit of Miller-Montgomery, did not provide those magic words, but I think did, in fact, comply even with what this original understanding of Miller and Montgomery was by some courts. And that's because, like I said, Idaho already had the things in place that were mandated by Miller. I know. What's the best? Can I get you to answer this other question, as I said, and then I'll try to get out of your way. But the record appears to me to be very clear that youth was considered and that the court decided that this individual was very, maybe even uniquely dangerous because he both murdered and he had immature frontal lobes, to use, to paraphrase, and was not fully appreciating consequences, perhaps, of his actions. So that tells me the court made a finding this person was very, very dangerous. What's the strongest indication that he decided that Mr. Adamczyk was also irreparably dangerous? I think, Your Honor, that was based on, and again, the court was not required to make any particular factual findings. But the uniqueness of this sentence in hearing, which Your Honor touched upon, is that there was a plethora of information. There was a number of psychologists that testified providing all of this information, not just about youth generally and the impact of youth on criminality, but Adamczyk's own particular characteristics, you know, one of them being that his own defense experts really could not identify a reason for these horrific crimes that were committed. There was this kind of uncertainty, which I think the court was very concerned about. So I think more than anything else, as Justice Kavanaugh told us, we had a plethora of information provided by defense. And when we know that information is presented, the trial court necessarily considers it. That's why there's no factual finding requirement. And here, as in all the excerpts that were quoted from the sentencing and also the Rule 35 hearing, the trial court clearly grappled with this. The trial court clearly wrestled with the youth of these two defendants and the impact. And that's because this had been a concern in Idaho in our sentencing hearings long before Miller and Montgomery. The Idaho Supreme Court did not have the benefit of Jones, which I think makes this a very simple case. But it did have not only the benefits of Miller and Montgomery, but Idaho law already in place. And like I said, Your Honor, Idaho juvenile murder sentencing hearings already had defense experts talking about youth, already had. So counsel, again, I don't mean to interrupt you, but just to be clear, we're communicating. I'm not just talking about youth because I'm giving you that. I think the record shows the trial class, just me, I think the record shows that youth was considered. I'm asking, what's the strongest indication that also, you know, irreparability or, you know, incapable of being rehabilitated was also considered, please? And I don't believe that, Your Honor, that the trial courts necessarily made factual findings to that regard, but it did have evidence presented to it about Adam Schick's rehabilitative potential. Like I said, Idaho has these defense experts which testify about these things. So I think most of all, the fact that was mentioned earlier that Adam Schick would likely kill if he was released from prison. I think that tells us not just about his youth, but certainly tells us about the permanence of that condition and the danger he poses to society permanently. And with this information that the court had access to, which I would submit to the court in these types of cases is very unusual. Adam Schick just isn't a defendant like Miller or Jackson or Montgomery or Jones was in his initial sentencing or any of these other juveniles who found themselves caught up in mandatory discretionary schemes with no opportunity to present mitigating evidence either about youth or about whether their crime was a result of transient immaturity. Adam Schick did have this opportunity. The court clearly considered all of that evidence. The court was not required to make factual findings, but I would suggest the court certainly made quite a few anyway and certainly considered all this information that was presented to it. Your Honor, Adam Schick's sentence was constitutional. The Idaho Supreme Court reasonably applied United States Supreme Court precedent, even the precedent that existed before the clarification in Jones, certainly with that clarification. And unless this court has any further questions, the respondent would respectfully request that this court to affirm the federal magistrate court's dismissal of Adam Schick's habeas petition. No further questions, counsel. Thank you for your argument. We'll hear from the opposing counsel. Could you put two minutes on the clock, Madam Clerk? Thank you. Go right ahead. Thank you, Your Honor. I want to focus on the claim, the Eighth Amendment substantive disproportionality claim as it came to the state courts on post-conviction review. And at that time, of course, Miller was already on the books and Montgomery was soon to come before there was a final denial. And what the state courts did was they said nothing about this post-sentencing evidence of rehabilitation that came in when Torrey was testifying on the ineffective assistance of counsel claims, when he was expressing remorse and when he was apologizing to Cassie's family, said nothing at all, only looked back at what the sentencing judge had done. They also refused to give him evidence. Counsel, I'm going to go back to my very first question to you, because if the Idaho courts are now obligated, I remember the premise of my first question was that the Idaho courts had done everything they were supposed to do, but it was all anticipatory. And now you're going to come in five years, eight years, 10 years later with post-conviction evidence. How are the Idaho courts supposed to anticipate that and ever issue a proper decision? And as a second part to that, if post if post-sentencing evidence is relevant and but a court has done everything it's supposed to at the time of sentencing, doesn't that mean that the record is open for forever? Doesn't it create the possibility of second and successive petitions and sort of undermine all that that we thought AEDPA meant? That's a very, very aggressive position, counsel. Your Honor, I think actually the bar on second and successive petitions and statutes of limitations and issue preclusion would all be things that the Idaho courts could look to in the course of the Supreme Court. And Jones knows that many of these Miller-Montgomery claims have been resolved by this point in time is we're still on just the first round of post conviction review. And Torrey is bringing his claim as a substantive Miller-Montgomery claim for the first time and saying, here's this other evidence. And we're not addressing a situation where the Idaho courts at that point on post conviction review could have said, we don't think any of this evidence that you're introduced to matters or we don't think it matters that he expressed remorse because we only care about looking to the record before. We're not going to give you another chance. So looking looking at AEDPA standards, does the does the post conviction or the post sentencing evidence, does that show that there was a failure in the fact finding that the facts were unreasonable when found at the time of sentencing? I think it well could, Your Honor, but I also think going to judge Kristen's line of questioning before, I don't think there is a finding of fact that satisfies the substantive Miller-Montgomery inquiry, even if there is some narrow finding of fact that Torrey might kill again. Again, it's not specific to any point in time. It is not a finding of irreparable corruption. So in that sense, the ultimate question before the court on the substantive claim is still open. For some period of time, Montgomery made Miller retroactive. So there's this wave of cases. There's a finite there's a bracketed number of them going forward. Of course, courts have Miller and Montgomery. But in these cases where individuals have been allowed to come forward and make this decision, I think it's a matter of time and time, is my understanding, and your position is, I think, that the court abused its discretion by not granting a hearing at the PCR level. Is that right? Your Honor, I would say it's not that the court abuses discretion necessarily, is that by failing to consider this new material evidence, the court did not adjudicate the claim that Torrey was actually pressing for purposes of Section 2254 D. And I'd urge the court to look at the two Winson decisions from the Fourth Circuit that we cite on pages 61 through 63 of the Blue Brief on this point. Just one, just one final point, maybe to close this out. Is it your contention that the trial court at the time of sentencing failed to consider any of the evidence that was in the record? I agree that the trial court at sentencing considered evidence of abuse. I do not think that it made a finding of irreparable corruption, nor do I think that any of its findings answer, as I was explaining to you a moment ago, the ultimate substantive inquiry. But is the answer to my question, no, he didn't fail to consider anything that was in the record at the time? That's correct. Okay. Judge Vibey? Judge Salamone? All right. We'll take this case under advisement. I want to thank both counsel for your excellent arguments. They're very helpful. We'll go on to the next case on the calendar.
judges: BYBEE, CHRISTEN, Selna